MOLE LAKE BAND, Lac Du Flambeau Band, Lac Courte Oreilles Band, Bad River, Otherwise Known as the La Pointe Band, Red Cliff Band, St. Croix Band, Comprising Bands of Lake Superior Chippewa Indians of Wisconsin, Plaintiffs, and the State of Wisconsin, Intervenor,

v.

The UNITED STATES, Defendant, and Fond Du Lac Band, Grand Portage Band, and Nett Lake Band, Otherwise Known as Bois Forte Band, All Bands of Lake Superior Chippewa Indians of Minnesota, Intervenors.

No. 45162 (1).

United States Court of Claims.

April 3, 1956.

Jay H. Hoag, Duluth, Minn., Ward Winton, Shell Lake, Wis., Vern R. Edwards, Superior, Wis., G. Arthur Johnson, Ashland, Wis., Clarence G. Lindquist, and Lathers, Hoag & Edwards,

Duluth, Minn., on the brief, for plaintiffs.

Stewart G. Honeck, Deputy Atty. Gen., and Gordon Samuelsen, Asst. Atty. Gen., both of Wisconsin, Vernon W. Thomson, Atty. Gen. of Wisconsin, on the brief, for intervenor.

Clifford R. Stearns, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

This is a suit by the Lac du Flambeau, Lac Courte Oreilles and Bad River Bands of Lake Superior Chippewa Indians of Wisconsin. It relates to swamp lands lying within the separate reservations of these three bands of Indians. The complaint of the Indians is that the United States, when it created their reservations, granted to them areas of land which included land which it had, some years before, granted to the State of Wisconsin, and that as a result of the conflicting grants the plaintiffs have been deprived of some of the land within their reservations, and of the proceeds of the timber which had been cut from these lands.

In an earlier stage in the proceedings in this case the court concluded that, since the alleged conflicting rights of the State of Wisconsin were an important element in the plaintiffs' case, the State should be notified of the proceeding, and advised of its right to intervene, pursuant to the Act of July 1, 1944, 58 Stat. 649, 663, 41 U.S.C.A. § 114. The State has filed a petition to intervene in which it asserts that it is the owner of the swamp lands in question and is entitled to the proceeds of timber cut from the lands. The case went to a hearing before a commissioner of this court and the plaintiff, the intervenor and the defendant presented their evidence. We have made extensive findings, based upon that evidence and our commissioner's report of it. In this opinion we will recite only such facts as seem necessary to make the opinion intelligible.

The Chippewa Nation as a whole, including the three plaintiff bands and many others, occupied a large area which extended both east and west of the Mississippi River in the northern parts of Wisconsin and Minnesota. By the Treaty of July 29, 1837, 7 Stat. 536, the Chippewa Nation ceded to the United States a strip of land approximately 100 miles wide (from north to south) and nearly 200 miles long (from east to west). All of this land lay east of the Mississippi River. The consideration for the cession was certain payments to be made by the United States. The intent of the treaty was that the Chippewas would withdraw to their other lands which lay west of the Mississippi. Article 5 of the treaty said:

"The privilege of hunting, fishing, and gathering the wild rice, upon the lands, the rivers and the lakes included in the territory ceded, is guaranteed to the Indians, during the pleasure of the President of the United States."

By the Treaty of October 4, 1842, 7 Stat. 591, another large area of land east of the Mississippi River was ceded by the Chippewa Nation to the United States, upon terms similar to those of the treaty of 1837.

The Chippewas were slow to move to their lands west of the Mississippi. On February 6, 1850, President Zachary Taylor issued an Executive Order revoking the privilege of the Indians to occupy, and hunt and fish and gather wild rice on, the lands ceded by the Chippewas to the United States by the Treaties of 1837 and 1842. Intensive efforts were made to effectuate the removal of the Indians. Some 2,000 of them were removed within a period of three years. But by 1854 the Commissioner of Indian Affairs was recommending exceptions to the policy of removal. And by the Treaty of September 30, 1854, 10 Stat. 1109, it was provided, among other things, that the United States would grant reservations, on lands east of the Mississippi

River which had been ceded to the United States by the Chippewas, to the three bands of Chippewas who are our present plaintiffs. The boundaries of the reservation for the La Pointe (Bad River) Band were defined in the treaty. The boundaries of the Lac du Flambeau and Courte Oreilles Reservations were to be later agreed upon or fixed by the President. Each of the latter two reservations was to contain an area of three townships.

We now go back to September 28, 1850, on which date the Swamp Lands Act, 9 Stat. 519, was approved. It provided that, in order to enable the state to construct the necessary levies and drains to reclaim the swamp and overflowed lands,

> "the whole of those swamp and overflowed lands, made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be, and the same are hereby, granted to the State."

Section 2 of the Swamp Lands Act provided that it should be the duty of the Secretary of the Interior, as soon as practicable, to make out an accurate list and plats of the swamp lands in the states, and transmit such lists to the governors of the states, and, at the request of the governors, cause patents to be issued to the states for the swamp lands.

■ We can now see the basis for the conflicting claims of the Indians and the State of Wisconsin for such of the lands of the Indians' reservations as were swamp lands.

The Government urges that none of the lands of the reservations passed to the State of Wisconsin by the Swamp Lands Act of 1850. The Swamp Lands Act of course only granted to the states land which was owned by the United States. The Government says that the land ceded by the Chippewa Nation to the United States by the Treaties of 1837 and 1842 did not become the property of the United States until it was vacated by the Indians; that the land included in the reservations never was vacated by the Indians; that they occupied it in 1850 when the Swamp Lands Act was passed; that the Treaty of 1854 granting their reservations was, in effect, only a relinquishment of the power of the President, reserved in the earlier treaties, to require them to vacate the land and thus perfect the title of the United States.

We do not agree with the Government's analysis. As our findings show, the intention of the parties to the Treaties of 1837 and 1842 was that the United States was to have the title to the land, and the Indians were to have only a revocable license to use the land until the President required them to vacate it. We think the land was, in 1850, public land of the United States to which the Swamp Lands Act applied.

Since the Treaty of 1854, granting to the Indians their reservations, as, indeed, before that time, they have had complete and exclusive use of the reservation land, subject to the usual Government supervision of the cutting and marketing of timber. They have had the proceeds of the sale of the timber, except that the sum of $119,450.50 plus accumulated interest, proceeds of the sale of timber from the Lac du Flambeau reservation, is being held by the Government on interest, to await the determination of its ownership. What, then, are the Indians suing for, except for this sum of money? The theory of their suit seems to be that the Government sold them land in 1854 that it did not own, and should pay them for what it sold them but did not deliver to them. But, as we have seen, they have, for more than 100 years, had the undisturbed possession of what the Government purported to sell them in 1854. Their damages, at least up to the present time, could be only such damages as resulted from a cloud upon their title, and no such damages have been proved.

The story of the actions of the United States and the State of Wisconsin with regard to the swamp lands both within and outside these reservations is told in detail in our findings. The State, dur-

ing most of the 100 years since the grant of the swamp lands, has insisted that it had rights in the lands, but has not been willing to disturb its citizens to whom the United States has granted such lands, outside the reservations, nor the Indians, within the reservations, in their possession of the lands. At times, the State, or important officials of the State, have expressed the opinion that the State did not own the swamp lands.

The position of the United States has, likewise, not been consistent. During part of the time it has denied that the State had any rights in the swamp lands in the reservations. Its officials have, at other times, sought to induce Congress to pay the State for the swamp lands within the reservations.

As we have said, the State of Wisconsin was notified by the court of the pendency of the suit of the Indians, and of its right to intervene in the suit, should it desire to do so. The reason for the notice was that it had become evident to the court that the conflicting grants were an important feature of the case. The State did file a petition, as an intervenor. In its petition the State denied the jurisdiction of this court over either the subject matter of the litigation, i. e., the title to the lands, or the state itself, in its sovereign capacity. However, because of the peril that it would run, if it failed to intervene, i. e., that a judgment that it had no rights in the land might be entered against it, it felt bound to intervene, reserving its rights to challenge our jurisdiction. It then asked for a judgment against the United States decreeing the title to the swamp lands in the reservations to be in the State of Wisconsin, and giving it a judgment against the United States for the proceeds of the timber cut and sold from those lands.

Since the State denies our jurisdiction, and only intervenes and asks relief because of the peril that it might be mistaken as to the question of our jurisdiction, we will not, of course, consider its petition or its prayer for relief unless it is necessary to do so in order to decide the issues between the plaintiffs and the United States. We do not find it necessary to do so, for reasons hereinafter stated, and will therefore dismiss the State's petition. Its participation in the trial has been helpful and instructive to the court.

When the United States granted the reservations to the Indians in 1854, it became obligated to them to secure to them the enjoyment of the lands and of the proceeds of the lands. This was so, whether or not the United States then had good title to the lands which it purported to grant. If the title had failed and the Indians had lost the possession of the lands, the United States would have been liable to compensate them for their loss. If one with a better title had taken the timber from the lands, the United States would have had to compensate them for the timber. Whether or not the State of Wisconsin ever has owned or does now own the swamp lands in the reservations is immaterial to the question of the obligation of the United States to the Indians, under the Treaty of 1854.

As we have said, the Indians have had the possession and enjoyment of the reservation lands, and have received the proceeds of the timber cut from the lands, except that the sum of $119,450.50, the proceeds of timber cut from the Lac du Flambeau Reservation during a certain period, has been held by the United States at interest to await a determination of the right to that money.

The Lac du Flambeau Band is entitled to recover the proceeds of timber cut from their reservation, to the extent that such proceeds have not already been paid over to them, together with the interest which has accumulated upon such unpaid proceeds.

The case is remanded to a commissioner of this court for a determination of the amount to which the Lac du Flambeau Band is entitled, in accordance with this opinion, and for a determination of the amount of offsets, if any, to which the United States may be entitled.

As to the Lac Courte Oreilles Band and the Bad River or La Pointe Band, the petition is dismissed.

The intervening petition of the State of Wisconsin is dismissed without prejudice.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.